EXHIBIT "A"

## THE UNITED STATED BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                    :          MISC. NO. 25-3003 PMM
    POTENTIAL SANCTIONS    :
    Regarding Debtors counsel  :
    Joseph T. Bambrick Jr., Esq. :
                                          :

### <u>COUNSEL'S AFFIDAVIT IN RESPONSE TO THE ORDER TO SHOW/CAUSE</u>

**COMES NOW,** Joseph T. Bambrick Jr., Esquire, who files his Affidavit in Response to the Order to Show/Cause filed by the Honorable Judge Patricia M. Mayer and avers as follows:

1. Initially when a client contacts my office considering the filing of Bankruptcy, a consultation is scheduled where I meet with the client(s) and decide whether or not it's appropriate to file bankruptcy and if so what chapter.

2. After consultation with the proposed client, they are given a written questionnaire to fill out concerning why they wish to file bankruptcy.

3. If bankruptcy is appropriate, the client(s) then meets with a bankruptcy paralegal.

4. I again meet with the proposed client prior to the filing of bankruptcy. I review the paperwork with them, I ask them a series of questions including but not limited to, if they have listed all your creditors on their bankruptcy, did they listed all the assets on the bankruptcy form, and if they have transferred any real estate in the last four years.

5. In addition, I tell the potential clients to list all their creditors even if they do not believe that they owe them money, but if someone has made a demand on them in the

last four years, they should list them. Only after this meeting do we file their bankruptcy in what I believe to be the appropriate chapter.

6. In addition, at least one client (Kenneth Imes) submitted a real estate value of $105,000.00 and the Trustee ultimately received a value of $250,600.00 (see attached **Exhibit "A"**).

7. I have been practicing in the bankruptcy court since approximately 1992, and this is the only time that there have been any questions concerning sanctions in regard to my practice.

8. I have met with Fred Baker, and I have told him that I will not accept any additional bankruptcy cases and that I will not file any additional bankruptcy cases.

9. If someone could contact me concerning the filing of bankruptcy, I would refer them to Attorney David Gellert AND WE DO NOT SHARE FEES NOR DOES ATTORNEY GELLERT PAY ME ANY REFFEREL FEES.

10. I have already been practically sanctioned in my practice because of my decision to discontinue practicing bankruptcy and therefore I have lost a significant source of income to practice.

11. In 2024, my entire practice was not profitable and if someone asked why I am staying in it, I am only doing so in order for my staff to reach retirement age and/or to effectively seek a new position.

12. The issue raised concerning my attendance at 341 hearings. 341 Hearings are scheduled by the trustee without any consultation with counsel. As a result, if counsel has a prior trial commitment and even if he requested a continuance (which I have many times) the continuances were often denied and as a result there were conflicts

with a Judge in Common Pleas versus a Hearing Officer at a 341 hearing. So, my attendance at a 341 hearing may be impaired by the fact that the Judge believes he has priority over administrative hearings and consequently there is the problem with the 341 hearing. Recently the issue arose when I was attached by the Honorable James Gavin by Court Order to his court room for a multi-day trial and as a result, I did not attend the 341 hearing even though the Trustee was advised of the conflict and would not continue the hearing. If I failed to appear for trial and/or I walked out in the middle of the trial to attend the 341 hearing, I was subject to the contempt of court and fines and possible imprisonment for "walking out" on a multi-day trial. Because I believe I concluded the last of my 341 hearings on May 20, 2025, this will no longer be an issue.

13. As noted above, I have been practicing in the bankruptcy court since approximately 1992 (not my admission date) and have never had any questions regarding sanctions and or disgorgement of fees prior to this time.

14. The issue that has caused this problem is the result of a rouge employee who had a court case filed against her in November of 2024 and a judgement was entered against her in the amount of approximately $3,600.00 this information was not revealed to me at the time. In addition, she was the Defendant in another lawsuit, and she fraudulently signed my name on an entry of appearance in that case! The only reason I discovered it was the District Justice Office contacted me. However, concurrent with these events the Pennsylvanian Attorney General also brought an action against her for food stamp fraud and I was contact by the Attorney General in Order to provide evidence of what her income was ( see attached **Exhibit "B"**).

15. Without knowledge of the above the employee who was the bankruptcy paralegal came to me and demanded a large pay increase or she was going to leave as the Court is aware my gross profit in a bankruptcy is only approximately $670.00 and I could not afford to give her an increase of any sizable portion. She then came to me after Christmas and said she had another job and wanted a big increase, or she was going to take it. I then tried to explain to her that I could not afford a big pay increase, and I hired a replacement person for her job whom she was supposed to train in the position. The paralegal who was hired for the bankruptcy position will attach a statement to this answer indicating what occurred when she attempted to be trained as a bankruptcy paralegal by the departing paralegal.

16. The rouge paralegal then came to me and said that there are a lot of problems with some of bankruptcy cases and that she should be hired as an independent contractor; however, she never told anyone in detail which cases had problems nor did she nor did she tell me.

17. I did hire her for the additional help and made one payment to her (see attached **Exhibit "C"**); however, she demanded additional funds if she were going to assist anyone with any of the problems which existed as a result of her being the paralegal at the time that they arose.

18. As noted above I have a limited payroll and the business is not profitable, I do not draw a salary of any kind, nor an advance, nor any other form of compensation from the practice. Therefore, the practice with the loss of additional bankruptcy filings , I was not able to afford to pay her. (see attached Affidavits from the Paralegals in the Office marked **Exhibit "D"** [compound Exhibit]).

19. At that time issues arose with the 341 hearings and the Trustees' unwillingness to continue some 341 hearings. As a result, some issues arose which I certainly did not wish to happen and which had not happened in the prior 33 years that I have been practicing bankruptcy, for that I truly regret what has happened and that is the reasons that I stopped accepting new bankruptcy cases.

20. The purpose of sanctions is to prevent something from happening again, as I noted above, I had already decided prior to speaking to Fred Baker not to file any additional bankruptcy cases and only to resolve any outstanding issues that are occurring at this time.

21. Again, to prevent any additional problems or any issues arising which may affect the client to (to which I absolutely wish to protect because they chose me for their legal matter) I have affiliated with Attorney Gellert for him to resolve any outstanding issues and/or problems.

22. There may be an issue that this Court is considering referring me to the Disciplinary Board for the reasons set out above. I urge this Honorable Court not to refer this matter to the Pennsylvania Disciplinary Board as I have no Commonwealth issues.

**WHEREFORE**, for all the reasons set out above I respectfully pray this Honorable Court to:

1. not issue any sanctions in this matter because they will serve no effective purpose other than to place my firm in a financial disadvantage because I am not accepting any new clients nor am I continuing to practice in this Court, because I have coordinated with Attorney Gellert and I will not be filing and /or participating in any other actions before this Court and/or Trustees because the matters will be referred to Attorney Gellert;

2. Not refer this matter to the Pennsylvania Disciplinary Board; and

3. Grant such other relief as this Court deems fitting and just.

Date: May 29, 2025

Sincerely submitted by,

Joseph T. Bambrick  Jr. Esquire
Attorney ID: 45112
529 Reading Avenue
West Reading, Pennsylvania 19611
P. (610) 372-6400
F. (610) 372-9483
E. No1jtb@aol.com

EXHIBIT "A"

December 17, 2024

Mr. Kenneth A. Imes
6561 Perkiomen Ave.
Birdsboro, PA 19508

Dear Mr. Imes;

Pursuant to your request, I, Joseph A. Peterson, Associate Broker, viewed the
subject property located at 616 W.2nd Street, in the Borough of Birdsboro,
Berks County, Pennsylvania. An inspection was made to determine the most
probable sale price of a fee simple estate of said property as of December 17,
2024.

As a result of the inspection, I am of the opinion that the most probable sales
price range is between $103,000 and $107,000 and the most probable sale
price is:

### One Hundred Five Thousand ($105,000.00) Dollars

I certify that an inspection of the subject real estate has been made, that the
facts and figures are true and correct to the best of my knowledge and belief,
subject to the limiting conditions herein set forth, that I have no present or
contemplated future interest in the property appraised and that neither the
employment to issue this report or the compensation for it is contingent upon
the opinion of value of the property.

Respectfully submitted;

Joseph A. Peterson
REALTOR Emeritus
Associate Broker

**Joe Peterson**

ASSOCIATE BROKER/MANAGER
1290 Broadcasting Road · Wyomissing, PA 19610
Office: 610-670-2770 · Cell: 610-823-0132
Toll Free: 800-206-0015 · Fax: 610-685-4155
JoePeterson@remax.net · www.JoePSells.com

☏ Each Office Independently Owned and Operated



# SUMMARY OF IMPORTANT FACTS

**LOCATION**: 616 W. 2nd Street, Birdsboro, Berks County, Pennsylvania

**OWNER OF RECORD**: Kenneth A. Imes Jr.

**LOT SIZE**:  30 x 146 - .10 acres

**TYPE OF IMPROVEMENTS**: 2 story frame semi-detached house.

**DEED REFERENCE**:  Document Number 39278

**HIGHEST & BEST USE**:  Single family residence.

**MOST PROBABLE SALES PRICE**: $105,000.00

**DATE OF VALUE**: December 17, 2024

## PURPOSE OF THE APPRAISAL
The purpose of this report is to estimate and express an opinion of the most probable sales price, in fee simple, as of December 17, 2024.

## SITE INFORMATION
The site is located on the south side of West 2nd St., the lot is primarily flat.

## IMPROVEMENTS
The improvements consist of a frame 2 story residence with a detached 1 car garage. The main floor consists of a living room, dining room, and kitchen. The upper floor has 3 bedrooms and a full bathroom. There is a full basement with laundry facilities. The house has a 220V/100A electric service, an oil-fired warm air heating system, and a gas fired domestic hot water heater. The property is serviced with public water and sewer.
The over all condition of the property is dated and in need of updates.

## ASSESSMENT / TAXES

County Assessment: $71,900

| Taxes: | | |
|---|---|---|
| Municipal | $ | 511.00 |
| County | $ | 600.00 |
| School | $ | 2,427.00 |
| Total | | $3,538.00 |

EXHIBIT "B"

## REQUEST FOR EMPLOYMENT/EARNINGS INFORMATION



| CO | RECORD | DIST | CASE LOAD |
|---|---|---|---|
| 06 | 129/520305 | | |

| DATE OF DISCOVERY | DATE OF NOTICE |
|---|---|
| 03/18/2025 | 03/18/2025 |

| WORKER NAME |
|---|
| Special Agent Robert W. Bowers |

| TELEPHONE NUMBER | FAX NUMBER |
|---|---|
| 717-756-7931 | 717-265-7381 |

PLEASE FAX OR RETURN TO ADDRESS SHOWN BELOW

Joseph T. Bambrick
529 Reading Ave.,
W Reading, Pa. 19611

Special Agent Robert W. Bowers
Office of State Inspector General
625 Cherry St.,
Reading, Pa. 19602

## **IMPORTANT**

62 PS 487 (B) REQUIRES, **UNDER PENALTY OF LAW,*** THAT YOU COMPLETE THIS FORM UPON REQUEST AND RETURN IT **WITHIN 30 DAYS TO THE ADDRESS ABOVE.** EVERY EMPLOYER IS REQUIRED, WHEN REQUESTED IN WRITING FROM THE DEPARTMENT, TO DISCLOSE ANY MONEY IN SALARY, WAGES, COMPENSATION, AND THE AMOUNTS AND DATES OF SUCH SALARY. THE DEPARTMENT CERTIFIES THAT THE EMPLOYEE BELOW IS APPLYING FOR, RECEIVING OR DID RECEIVE PUBLIC ASSISTANCE, OR IS A LEGALLY RESPONSIBLE RELATIVE OF THE EMPLOYEE.

* A FINE NOT TO EXCEED $1,000

| SUBJECT OF INQUIRY | |
|---|---|
| EMPLOYEE'S NAME Alyssa A. Santa | SOCIAL SECURITY NUMBER 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 |
| COMMENT Please provide the hire date. *[handwritten]* | LAST KNOWN ADDRESS *2317 Wilson School Lane Sinking Spring, PA 19608* |

**EMPLOYER PAYROLL INFORMATION**

COMPLETE THE INFORMATION REQUESTED BELOW AND ON THE BACK OF THIS FORM IF THE PERSON IS OR WAS EVER IN YOUR EMPLOY (PLEASE PRINT OR TYPE).

| EMPLOYEE TELEPHONE NUMBER ( ) | EARNED INCOME CREDIT (EIC) RECEIVED ☐ YES ☐ NO |
|---|---|

IS INDIVIDUAL CURRENTLY EMPLOYED? ☐ YES  ☒ NO   IF NO, REASON FOR TERMINATION

*She quit*

| EMPLOYER MEDICAL INFORMATION | |
|---|---|
| MEDICAL INSURANCE COMPANY *None* | MEDICAL INSURANCE COMPANY ADDRESS *N/A* |

| DATES OF COVERAGE FROM *N/A* TO | TYPE OF COVERAGE *None* | POLICY / CONTRACT NUMBER | GROUP NAME / NUMBER |
|---|---|---|---|

**Please provide earnings information by DATE of PAY as indicated ON REVERSE SIDE**



PA 78  6/16



PROVIDE EARNINGS INFORMATION BY DATE OF PAY FROM _____01/01/2023_____ TO PRESENT.
PLEASE DO NOT USE QUARTERLY OR YEARLY AMOUNTS. A COMPUTER PRINTOUT OF THE EARNINGS
DATA MAY BE SUBSTITUTED IF IT CONTAINS ALL OF THE REQUESTED INFORMATION. ACTUAL DATES
OF PAY MUST BE INCLUDED, NOT MERELY "PAY PERIOD ENDING" OR "WEEK ENDING" INFORMATION.
PLEASE PRINT OR TYPE AND SIGN YOUR NAME BELOW.

| DATE OF PAY | GROSS AMOUNT | REGULAR HOURS | OVERTIME HOURS | TOTAL TAXES |
|---|---|---|---|---|
| 1/4/24 | 339.30 | | | 39.78 |
| 1/12/24 | 367.97 | | | 44.40 |
| 1/19/24 | 488.70 | | | 59.64 |
| 1/26/24 | 517.46 | | | 62.03 |
| 2/2/24 | 563.45 | 24.50 | | 69.44 |
| 2/8/24 | 573.42 | 24.94 | | 68.68 |
| 2/16/24 | 683.51 | 29.73 | | 80.14 |
| 2/22/24 | 623.25 | 19.10 | | 69.50 |
| 3/8/24 | 563.09 | 14.19 | | 66.90 |
| 3/15/24 | 644.78 | 16.90 | | 77.70 |
| 3/1/24 | 663.88 | 17.32 | | 78.23 |
| 3/24/24 | 726.35 | 17.02 | | 86.71 |
| 4/5/24 | 724.44 | 18.90 | | 89.92 |
| 4/12/24 | 605.61 | 15.80 | | 72.44 |

PAY RATE: $23.00 per hour

_Joseph F. Bambrick_ _OWNER_
EMPLOYER'S REPRESENTATIVE      TITLE
(PLEASE PRINT)

_[signature]_  610-312-6420

SIGNATURE    PHONE NUMBER

3/19/25
DATE

USE THIS SPACE FOR ADDITIONAL COMMENTS:

| a Employee's social security number | | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it |
|---|---|---|

OMB No. 1545-0008

| b Employer identification number (EIN) 23 241 4532 | 1 Wages, tips, other compensation 32,898.02 | 2 Federal income tax withheld 1,140.00 |
|---|---|---|
| c Employer's name, address, and ZIP code Joseph T. Bambrick, Jr., Esquire 529 Reading Ave. West Reading, PA 19611 | 3 Social security wages 32,898.02 | 4 Social security tax withheld 2,039.68 |
| | 5 Medicare wages and tips 32,898.02 | 6 Medicare tax withheld 477.02 |
| | 7 Social security tips | 8 Allocated tips |
| d Control number | 9 | 10 Dependent care benefits |
| e Employee's name, address, and ZIP code Alyssa Santa 2907 WilsonSchool Lane Sinking Spring, PA 19608 | 11 Nonqualified plans | 12a See instructions for box 12 |
| | 13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | 12b |
| | 14 Other | 12c |
| | | 12d |

| 15 State PA | Employer's state ID number | 16 State wages, tips, etc. 32,898.02 | 17 State income tax 1,009.97 | 18 Local wages, tips, etc. 32,898.02 | 19 Local income tax 25.48 | 20 Locality name |
|---|---|---|---|---|---|---|

Form **W-2** **Wage and Tax Statement**

Copy C – For EMPLOYEE'S RECORDS
(See *Notice to Employee* on the back of Copy B.)

**2023**

Department of the Treasury—Internal Revenue Service

Safe, accurate,
FAST! Use

 e‑file

EXHIBIT "C"

JOSEPH T. BAMBRICK, ESQUIRE

5745

PAY TO THE ORDER OF _Alyssa Smith_                    DATE _2/13/25_

_One Hundred Seventy Five_                            $ _175.00_

CUSTOMERS BANK                                         DOLLARS

FOR _Payment in Full_

⑆005745⑆ ⑈031302971⑈ 644 487 2⑈

02/27/25                    #5745                    $175.00

EXHIBIT "D"

# **AFFIDAVIT**

My name is Christine Manga and I have been working for the firm since September of 1991 as a paralegal.

Mr. Bambrick has always practiced bankruptcy law, and it was always a big part of the firm's practice.

Over the years, Mr. Bambrick represented numerous clients in bankruptcy cases, either Chapter 7, 13 and Chapter 11 cases without any issues before this Court, nor any other Court of Law.

Mr. Bambrick's firm always had at least one bankruptcy paralegal working with and assisting clients with filing the bankruptcy petition, gathering all the information and documents from clients, post consultation with Mr. Bambrick, as well as meeting deadlines for filing documents, etc.

In the last seven years, the law firm's Bankruptcy paralegal has been working with and assisting clients in the Bankruptcy proceedings, as well as assisting Mr. Bambrick with any of the responsibilities that come along with the bankruptcy cases.

In 2024, the financial pressure became a problem to the bankruptcy paralegal and therefore she started seeking other employment opportunities locally; however, even though she found other employment, she was not sure that she wanted to depart the firm due to the flexibility in schedule that the firm was and still provides (to all the employees), having a family like relationship, and working in a relaxed work environment.

She told me that she needed an increase in her income and therefore she would approach Mr. Bambrick to discuss it and if he will not grant her the increase, she plans to leave the firm.

After discussing the financial situation with Mr. Bambrick, the paralegal decided that she would accept the job offer and she would depart the law firm.

I had numerous discussions with her pertaining to her departure concerning the multiple bankruptcy cases that were pending and/or clients that were supposed to have their bankruptcy petition filed.

Talking to her about her job offer acceptance, even though it was a substantial increase in income, she was very upset that Mr. Bambrick did not grant her the raise so that she could continue staying with the firm.

Myself and at least one of the other paralegals in the office along with Mr. Bambrick had great concern about the pending bankruptcy cases and the cases that still needed to be filed! The departing paralegal reminded the office almost daily that she is demanding a pay increase in order to train the new bankruptcy paralegal.

The firm advertised the availability of the bankruptcy paralegal position on LinkedIn and was immediately filled.  However, the departing bankruptcy paralegal became very hostile and reluctant against training the new paralegal in any way, by demanding the increase in her pay in order to train her, and threatening that after her last day with the firm, to not text her nor ask her any questions about anything.

It was with great concern that I spoke to her quite often, once she decided to leave the firm, in reference to her lack of cooperation in training the new paralegal.

Very shortly after her departure, on January 31st, 2025, our office received numerous phone calls from bankruptcy clients complaining that they had not heard back from her despite reaching out on numerous occasions to speak to her, or that their bankruptcy petition was not filed, or that they have not been kept up to date about their bankruptcy filing.

It was very concerning and overwhelming because so many clients reached out with various problems, such as dismissals, issues with their document filings, missed deadlines, etc., that we were unaware of and over the course of her seven years of employment with the firm, none of these problems occurred.

Mr. Bambrick immediately contacted Attorney David Gellert in order to receive assistance, not only to navigate all the various issues, but also to help the newly hired paralegal with filings and/or any other ongoing bankruptcy cases.

In addition, it was at that point that Mr. Bambrick was very concerned and held a meeting, and on or about the beginning of February when he decided that we should no longer accept new bankruptcy clients and that he would ask Attorney Gellert for assistance with the current cases and refer any future potential bankruptcy clients to him.

Our firm was not aware of all the issues in the bankruptcy cases because the paralegal communicated via email directly with the clients, and/or phone calls directly with her.

Up and until 2024, the departing Paralegal has worked in good ethics and showed responsibility in dealing with the bankruptcy clients and cases filed before this Honorable Court.

**I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.**

Date: May 29, 2025

**Christine Manga, Paralegal**

## AFFIDAVIT OF MELINDA ADAMS

I have been employed as a Paralegal with Attorney Bambrick since August 2021.

We have four Paralegals, including myself, in the office working under the Direction of Attorney Bambrick.

One of the four Paralegals was a Bankruptcy Paralegal. The Paralegal was also a college graduate and had obtained her Associate Degree.

The Paralegal is well experienced in the Bankruptcy field and would work with the clients after their consultation and\or meeting with Attorney Bambrick.

The Paralegal was the point of contact for the Bankruptcy clients and would ensure that all documents were filed on time and that all scheduled meetings were added to Attorney Bambrick's calendar.

The Paralegal has always communicated with Trustee and clients with no previous issues, there was absolutely no concern or red flags throughout the employee's years of employment with Attorney Bambrick.

In November of 2023 the Bankruptcy Paralegal was on Maternity Leave until on or about January 2024.

In January 2024, the Paralegal returned to the office and after speaking with Attorney Bambrick on several occasions for a pay raise, she was looking for other employment opportunities.

On or about December 2024, the Paralegal advised she was offered another opportunity at another law firm and would be departing from the law office of Joseph T. Bambrick Jr.

During this time, we started looking to hire another Paralegal in place of departing Paralegal and to allow for on the job training.

Initially the departing Paralegal was adamant about not training any potential new employee, because she would not have the time or the right amount of pay to both continue to work on the current bankruptcies and train a new hire.

The transitional period of the departing employee and the hiring of a new employee was extremely stressful at the time, and after my colleague expressed to the departing paralegal that it affects us as an office and if she cared she would be more helpful., the Paralegal agreed to help with training the new employee.

After several interviews, a Paralegal was hired who  recently just graduated from College with her Criminal Justice Associates Degree and is continuing her education to in Kutztown University to obtain her Bachelors Degree.

The Paralegal that was hired was working with the departing Paralegal and only had one week of training by working one on one with Paralegal to learn the basics of filing Bankruptcies via Best Case and her role as the Paralegal.

The departing Paralegal advised that she would have limited availability to help once she starts working with her new employer due to her also undergoing training. She advised that she can be reached via text message for any questions the new employee would have.

However, issues arose between the two and that option would no longer be available.

There were issues with the Bankruptcies, and the office started to get phone calls from clients about their current Bankruptcy case, and the office, including Attorney Bambrick worked together to figure out what cases were still active and which clients were having issues and what those issues were and how to correct them.

Along the way there were also issues with the Best-Case Software, and access to some of the Bankruptcy sites such as Pacer, 13 Network, and with the Juno Email Server that this firm was using solely for Bankruptcy cases.

In addition, the departed employee would communicate with her alternate email, outside of Juno, and the office had no access to the email to use for reference and to see any communications she may have had with any Trustee and or client.

With all that occurred with Bankruptcy, Attorney Bambrick held a meeting and advised us that we will no longer be handling any new bankruptcy cases, and we are to refer any clients interested in Bankruptcy to Attorney Gellert.

We have since, removed Bankruptcy from the Company's website and Google Profile and have provided client files to Attorney Gellert.

We have also provided refunds to clients, included in the current Order to Show/Cause.

Date: May 28, 2024                                    Melinda Adams

VERIFICATION

    I, verify that the statements made in this Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

DATE: _May 28, 2025_

_Melinda Adams_
Melinda Adams

# AFFIDAVIT OF KYMBERLIN M. LACOSTA

My name is Kymberlin M. Lacosta, and I want to share my experience working at the Law Office of Joseph T. Bambrick Jr, Esq, where I started as a Bankruptcy paralegal on January 22nd, 2025.

When I started, I was told that the previous paralegal would be training me. I didn't receive proper training from her. She provided very little explanation when I asked questions, I often felt ignored or brushed off. Because of that, I had to figure out most of my job on my own through research and trial and error.

Before she officially left the office, she told me there were going to be "a lot of problems" with the cases after she was gone. It turns out she was right; a lot of the cases she had worked on were not properly filed or there were issues within the case. I dedicated hours trying to fix those errors, with the help of Attorney David Gellert, who has also been supportive and helpful through the process.

At the beginning, she told me I could reach out to her through text if I had questions, since she has already started a new job. She said she was more familiar with the clients and the cases, and that she knew more about what was going on than my boss. That's the reason I relied on her more than on Attorney Bambrick at first, I believed she was more up to date on everything.

What I didn't know was that she was complaining to Attorney Bambrick about me texting her, even though she gave me her number willingly and offered to help. I also didn't know she was charging him for helping me, while giving me very little support.

Once I found out, I stopped contacting her. After that, she started texting me with rude, unprofessional, and disrespectful messages. Even after I blocked her number, she continued to email me with negative and harassing comments.

That's when I decided to stop asking her for help completely and started figuring out on my own, because I refused to keep being treated that way.

Since then, I've been getting support from my coworkers, who have helped me as much as they can. Attorney Bambrick has also been very supportive, always offering help when I need it. I've also received advice from attorneys/trustees outside of the law office, and I'm truly grateful for their guidance.

I'm still learning and growing in my role as a bankruptcy paralegal. I'm committed to improving and doing my best, especially with the support and patience of those who genuinely want to help me succeed.


Kymberlin M. Lacosta




**VERIFICATION**

I, verify that the statements made in this Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

DATE: 5/28/25

Kymberlin M. Lacosta